UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| IN RE: HAVEN ELDERCARE, LLC, et al., | : | Bankruptcy Case No. 07-32720 |
| | : | |
| ------------------------------------------------------------ | : | |
| | : | |
| TC HEALTHCARE I, LLC, | : | |
|          Appellant, | : | |
| | : | |
| v. | : | No. 3:11cv1090 (MRK) |
| | : | |
| RACHEAL DUPUIS, | : | |
|          Appellee. | : | |

**RULING AND ORDER**

TC Healthcare I, LLC appeals an Order issued by the Bankruptcy Court—as well as the Bankruptcy Court's refusal to reconsider that Order—regarding a dispute with Appellee Racheal Dupuis over a $4,944.51 tuition reimbursement. Having failed to present admissible evidence that might have spared it this expense when Ms. Dupuis first pressed her claim in Vermont's Small Claims Court, TC Healthcare now asks this Court to reverse the Bankruptcy Court, which itself declined to upset the judgments of the Vermont state courts that have considered this matter.

As the basis for its Order, the Bankruptcy Court invoked the *Rooker-Feldman* doctrine—something this Court, for the reasons that follow, is disinclined to do. However, the Court finds that res judicata leads to the same result. Thus, the Bankruptcy Court's Order, if not its reasoning, is hereby AFFIRMED.

**I.**

Ms. Dupuis was employed by a nursing home operator, Haven Eldercare LLC ("Haven"), which filed for Chapter 11 bankruptcy protection in 2007. Before the bankruptcy, Ms. Dupuis and Haven entered into a tuition reimbursement contract, under which Haven agreed to pay for Ms. Dupuis's nursing classes. In July 2008, the Bankruptcy Court authorized the sale of certain of Haven's assets, and TC Healthcare became the licensed operator of the facility at which Ms. Dupuis, even now, continues to work. After TC Healthcare refused to reimburse Ms. Dupuis for her tuition expenses, she filed an action in Vermont's Small Claims Court seeking the $4,939.36 she felt she was owed.

At the small claims proceeding held on December 16, 2010, Ms. Dupuis represented herself—as she does in this Court as well. A lawyer for TC Healthcare appeared, but failed to offer admissible evidence to show that the Bankruptcy Court's Order of Sale shielded TC Healthcare from obligations incurred by Haven. As a result, the Small Claims Court awarded Ms. Dupuis damages, interest, and costs totaling $4,944.51. The Vermont Superior Court affirmed the Small Claims Court judgment, and Vermont's Supreme Court subsequently declined to hear the case.

While the state proceedings were still ongoing—but after the Small Claims Court's judgment had been issued—TC Healthcare filed a Motion in Bankruptcy Court seeking enforcement of the Bankruptcy Court's 2008 Order of Sale and a ruling stating that TC Healthcare had no liability to Ms. Dupuis. *See* Motion for Enforcement, *In re Haven Eldercare, LLC*, No. 07-32720 (ASD) (Bankr. D. Conn. Mar. 22, 2011), ECF No. 1566. After a hearing, the Bankruptcy Court determined that "the Rooker-Feldman Doctrine operates to preclude the relief requested as a collateral attack on a state court decision." *See* Brief Memorandum of Decision

and Order, *In re Haven Eldercare, LLC*, No. 07-32720 (ASD) (Bankr. D. Conn. Apr. 14, 2011), ECF No. 1579 (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).

TC Healthcare now invokes this Court's authority under 28 U.S.C. § 158(a)(1) "to hear appeals . . . from final judgments, orders, and decrees" of Bankruptcy Judges in the District of Connecticut. Noting that, on appeal, the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings," Fed. R. Bankr. P. 8013, TC Healthcare asks this Court to reverse the Bankruptcy Court's Order, to hold that the *Rooker-Feldman* doctrine does not apply in this case, and to declare that TC Healthcare did not assume Haven's obligations to Ms. Dupuis.

Because the Bankruptcy Court's Order was based entirely on a legal conclusion—its application of the *Rooker-Feldman* doctrine—this Court's review is *de novo*. *See In re Cacioli*, 332 B.R. 514, 517 (D. Conn. 2005).

## II.

The *Rooker-Feldman* doctrine deprives federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Second Circuit has listed four requirements for *Rooker-Feldman* to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (quotation marks and alterations omitted).

The central question presented in this case is one that the Second Circuit has not yet confronted: whether the *Rooker-Feldman* doctrine prohibits a state court loser from filing a federal challenge to a state court decision while the state case is still being appealed. As Judge Bianco of the Eastern District of New York has detailed, other circuit courts, as well as district courts within this Circuit, are split on the question. *See Cladwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 346-48 (E.D.N.Y. 2010) (collecting and comparing cases). Some courts lean on the Supreme Court's statement in *Exxon Mobil* that *Rooker* and *Feldman* both concerned suits "filed . . . in federal court *after the state proceedings ended*." *Exxon Mobil*, 544 U.S. at 291 (emphasis added); *see Nicholson v. Shafe*, 558 F.3d 1266, 1275-76 (11th Cir. 2009); *Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005). Others focus on *Exxon Mobil*'s seemingly broader proscription of lower federal courts giving appellate review to "state-court *judgments*." *Exxon Mobil*, 544 U.S. at 283, 284; *see Cladwell*, 701 F. Supp. 2d at 348 ("Regardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment. This is what *Rooker-Feldman* prohibits." (citation omitted)); *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 137 (E.D.N.Y. 2006) ("*Rooker-Feldman* establishes the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.").

The Second Circuit's four-part test does not resolve this conflict. In fact, its fourth requirement—"the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal-court suits

4

proceeding in parallel with ongoing state-court litigation"—invites both interpretations. *Hoblock*, 422 F.3d at 85 (quotation marks omitted). In the present case, a state-court judgment was rendered before the federal motion was filed, but, given TC Healthcare's state-court appeals, federal and state suits were also initially "proceeding in parallel." The Second Circuit's test thus provides both sides equal comfort.

The Bankruptcy Court's opinion did not acknowledge the fray into which it was entering, or explain why it was siding with one side rather than another. This Court is saved from taking sides only because the case can be resolved much more easily on another, alternate ground: res judicata.

### III.

Even if the Supreme Court in *Exxon Mobil* "pared back the *Rooker-Feldman* doctrine to its core," it also made clear "that the narrow *Rooker-Feldman* inquiry is distinct from the question whether claim preclusion (res judicata) or issue preclusion (collateral estoppel) will defeat a federal plaintiff's suit." *Id.* at 85, 92. Federal courts must "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 80-81 (1984). Thus, in the present context, the Court looks to Vermont law for guidance.

TC Healthcare has argued that "it is well established that decisions in small claims cases have no preclusive effect under the laws of the State of Vermont." Reply Br. of Appellant [doc. # 18] at 3 (citing *Cold Spring Farm Development, Inc. v. Ball*, 163 Vt. 466 (1995)). This claim is incorrect. In *Cold Spring Farm*, the case on which TC Healthcare relies, the Vermont Supreme Court held that small claims proceedings in that State do not have *issue* preclusive effect—in other words, they do not give rise to collateral estoppel. *See* 163 Vt. at 471. This is not to say,

5

however, that they have no preclusive effect at all. In fact, in *Cold Spring Farm*, the Vermont Supreme Court very clearly separated issue and claim preclusion—collateral estoppel and res judicata—into two distinct, numbered questions. *See id.* at 468. After deciding that small claims proceedings would not be given issue preclusive effect, the court turned to the "second argument on appeal[:] that the superior court should have dismissed plaintiff's claim under the doctrine of res judicata, or claim preclusion, because all of the issues . . . had been or could have been litigated in small claims court." *Id.* at 472. In the end, the Vermont Supreme Court did not find the matter in *Cold Spring Farm* to be res judicata. But, importantly, this was not because small claims proceedings are unable to have claim (as opposed to issue) preclusive effect. Instead, the Vermont Supreme Court simply found that the claim at stake in *Cold Spring Farm* had not been previously litigated. *Id.* at 472-73.

Under Vermont law, "claim preclusion will preclude a claim from being litigated if (1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding." *Iannarone v. Limoggio*, 30 A.3d 655, 660 (Vt. 2011) (quotation marks omitted). In this case, neither Ms. Dupuis nor TC Healthcare disputes that a previous final judgment exists between them. TC Healthcare's only contention is that Ms. Dupuis's claim was not fully litigated in the prior proceeding since the Small Claims Court did not consider the Bankruptcy Court's 2008 Order. *See* Reply Br. of Appellant [doc. # 18] at 3. However, even if the claim *was* not fully litigated, it undoubtedly "*could have been* fully litigated," *Iannarone*, 30 A.3d at 660 (emphasis added), had TC Healthcare only come to the small claims proceeding equipped with admissible evidence. Having failed to do so and lost its case, TC Healthcare does not get another bite at the

apple in federal court. Res judicata provides Ms. Dupuis with an affirmative defense to TC Healthcare's attempt at re-litigation. *See Exxon Mobil*, 544 U.S. at 293.

The distinction between issue preclusion and claim preclusion is an especially important one in the present context because it ultimately helps both parties. Claim preclusion, as the Court has just noted, ensures that Ms. Dupuis's victory in Vermont's Small Claims Court continues to bind the Parties here—but only them. TC Healthcare can rest assured that the worry it expressed in Bankruptcy Court—that hundreds of other litigants will rely on Ms. Dupuis's judgment to hold TC Healthcare liable for Haven's debts, *see* Ex. [doc. # 12-12] (Hr'g Tr.) at 17-20—is unfounded. Because issue preclusion does not apply, Ms. Dupuis's small claims judgment does nothing to open TC Healthcare to any broader liability; the judgment she obtained simply cannot be used by other litigants.

In sum: the fact that claim preclusion applies here means that Ms. Dupuis is entitled to the $4,944.51 awarded her by the Small Claims Court; the fact that issue preclusion does *not* apply means that TC Healthcare will not find itself automatically liable to others who may have similar claims.

The Order of the Bankruptcy Court is AFFIRMED. **The clerk is instructed to close this file.**

IT IS SO ORDERED.

 /s/  Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: January 10, 2012.**